OPINION OF THE COURT
Joseph Fisch, J.
Defendant was convicted after a jury trial, at which he testified, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. In response to the defendant’s presentence memorandum requesting leniency in sentencing, the District Attorney’s office, citing United States v Dunnigan (507 US —, 113 S Ct 1111 [1993]), contends that the defendant should receive an "enhanced sentence”, i.e., a higher sentence than the court would otherwise impose based upon his alleged perjury at trial. The People claim this perjury is established by the contradictions between defendant’s trial testimony concerning his drug addiction and his statements about his addictions to the social workers of the Legal Aid Society in the presentence memorandum submitted to the court on his behalf. In Dunnigan (supra) the United States Supreme Court affirmed a trial court’s imposition of an enhanced sentence based on the Federal court’s finding that the defendant perjured himself at trial, citing an earlier precedent: United States v Grayson (438 US 41 [1978]).
In United States v Grayson (supra) the United States Supreme Court held that it was not a denial of due process for a sentencing Judge to consider a defendant’s perjury which that Judge observed during the trial when imposing a sentence within statutory limits, although there was no specific legislative authority for enhancement.
In the Grayson case (supra), the inmate Grayson escaped from Federal prison and was apprehended two days later by FBI agents in New York City.
Grayson testified in his own defense, in his prosecution for prison escape, claiming that he left prison camp because his life was threatened by an inmate named Barnes. The Government rebutted Grayson’s defense by calling Barnes (no longer an inmate), as well as a prison captain, who contradicted Grayson’s trial testimony that he had reported threats by an inmate. Grayson also testified that after crossing the prison fence he left his prison jacket and prison shirt by the side of *214 the road, but not his trousers. Government testimony showed that on the morning after his escape, a shirt marked with Grayson’s number, a jacket, and a pair of prison trousers were found outside a hole in the prison fence. As the United States Supreme Court noted in Grayson (supra, at 43, n 1) "Grayson stated that after unpremeditatedly fleeing the prison with no possessions and crossing the fence, he hitchhiked to New York City — a difficult task for a man with no trousers. The United States suggested that by prearrangement Grayson met someone, possibly a woman friend, on the highway near the break in the fence and that this accomplice provided civilian clothes.” In addition, the Government’s proof included the testimony of two FBI agents that when Grayson was arrested, he denied his true identity. The lower court in imposing sentence stated that it was seeking to deter Grayson and others similarly situated from committing perjury at trial. The Court characterized Grayson’s defense as " 'a complete fabrication without the slightest merit whatsoever’ ”, and stated: " 7 feel it is proper for me to consider that fact in the sentencing, and I will do so.’ ” (United States v Grayson, supra, at 44.) Accordingly, the District Court imposed an enhanced sentence under the Federal indeterminate sentencing statutes then in effect, although such enhancement was not specifically prescribed. A divided Court of Appeals for the Third Circuit vacated and remanded for resentencing; two Judges found the sentence enhancement an abuse of discretion and one Judge in a concurring opinion stated that such enhancement impermissibly chilled the constitutional right to testify and violated due process of law. The United States Supreme Court granted centiorari and reversed, reinstating the sentence of the District Court. In so holding, the Court stated that it was reaffirming the authority of the sentencing Judge to consider a defendant’s willful and material falsehoods in his trial testimony, and to "assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society”. (United States v Grayson, supra, at 55.)
In the case at bar, defendant denied selling drugs. He took the stand and testified that be observed a man, similar to him in dress and height, participate in a drug sale shortly before he was apprehended. He also testified that he was a heroin addict, claiming such addiction was caused by his use of painkillers in Vietnam and Germany to alleviate pain from a *215 service-related injury. The presentence memorandum submitted on his behalf noted that his addiction to illegal drugs began in the United States after he was discharged from the service. The People contend that although the particular discrepancy concerning his addiction was not directly relevant to the charges, such testimony concerning his Vietnam service was strategically relevant to the goal of eliciting jury sympathy.
The People further argue that this falsehood, coupled with defendant’s false testimony claiming innocence of the charges for which he stood trial and was convicted, constitute willful and materially false statements, i.e., perjury, that may be considered by this court in assessing the defendant’s history and character to determine an appropriate sentence.
Defense counsel contends that this court should find such consideration irrelevant. Defense concedes that the majority of reported State jurisdictions permit consideration of a defendant’s trial perjury as a factor in enhancing sentence on the ground that it evidences lack of potential for rehabilitation. Although, some 21 States,[1] relying on Grayson (438 US 41, *216 supra), have held that a sentencing court may permissibly consider a defendant’s perjury as relevant to the prospect of his rehabilitation, in accordance with specified safeguards, the defense urges this court to adopt the view of three States (Louisiana, Massachusetts and North Carolina) which have held such consideration in imposing sentence to be improper.[2] One State: Florida,[3] has, as of this writing, a conflict in the case law.
The issue of sentence enhancement based on perjury has generally arisen in the State courts both in the context of State indeterminate and determinate sentencing statutes. The determinate statutes prescribe a definite sentence but permit upward or downward departure based on the sentencing Judge’s determination of aggravating and/or mitigating factors. The State courts which permit sentence enhancement for perjury under these determinate sentencing statutes have held that the perjury is an aggravating factor, although not specifically so designated in the statute.[4] Defense counsel relies on the fact that United States v Dunnigan (507 US —, 113 S Ct 1111, supra) involved current Federal determinate sentencing where enhancement is mandated under Sentencing Guideline § 3C1.1 if the defendant " 'willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice’ ” which both the parties in that case correctly assumed included perjury. (See, United States v Dunnigan, 507 US, at —, 113 S Ct, at 1115-1116, supra, quoting the commentary to § 3C1.1.)[5]
*217 Since New York’s sentencing scheme is indeterminate, defense counsel urges that this be considered by the court in adopting the minority position among the several States that any consideration by the sentencing court of a defendant’s perjury during his trial testimony as a factor in sentencing (1) is not authorized; (2) violates defendant’s right to due process of law since the procedural safeguards of a formal trial for perjury are absent and (3) impermissibly chills the defendant’s right to testify in his own behalf. For the reasons set forth herein, the court rejects these arguments by the defense, but declines to impose an enhanced sentence as not appropriate in this particular case.
This is a case of first impression in New York State. The issues before this court are as follows:
(1) Is this court authorized to consider a defendant’s perjury at trial as a factor in enhancing his sentence?
(2) Does the consideration of a defendant’s trial perjury by the sentencing court in enhancing sentence, within statutory prescribed limits, impermissibly chill the defendant’s exercise of his right to testify?
(3) Does the enhancement of a defendant’s sentence because of his perjury at trial violate due process of law since the procedural safeguards of a formal trial of perjury are absent?
(4) If such enhancement is constitutional, what are the criteria to which the sentencing Judge must adhere in imposing an enhanced sentence consistent with due process?, and
(5) Is this an appropriate case for sentence enhancement?
To answer these questions, an examination of the history and purpose of sentencing in the criminal justice system is necessary.
"At early common law, every crime required a fixed penalty.” (State v Thompson, 310 NC 209, 216, 311 SE2d 866, 870 [1984], citing 4 Blackstone, Commentaries 376 [Wendell ed 1847].)
In the early days of our Republic, most State Legislatures prescribed definite sentences for specified crimes. (United *218 States v Grayson, 438 US 41, 45-46 [1978], supra.) As time went on, such mandatory fixed penalties were eventually replaced by State statutes permitting the court to select an appropriate sentence within a defined minimum and maximum range with the possibility of defendant’s release by a Parole Board after his service of the minimum. In deciding upon an appropriate sentence, the court was to consider all facts about the crime and the individual offender. (United States v Grayson, supra, at 46, citing Tappan, Sentencing Under the Model Penal Code, 23 Law & Contemp Prob 528, 529 [1958].) At the time Grayson (supra) was decided, Federal sentencing was similarly indeterminate. As the United States Supreme Court noted in Grayson (supra, at 46) the reason for this change was a reform movement asserting that the purpose of incarceration and therefore the guiding consideration in sentencing, should be rehabilitation of the offender.
However, despite the reform movement’s emphasis on rehabilitation, this goal was never regarded as the sole aim of imposing a penal sentence. Sentencing has been recognized as having five goals, described by Judge Marvin Frankel in his classic series of essays: Criminal Sentences: Law without Order (1973):
1. Punishment of the offender.
2. Specific deterrence (of the particular offender).
3. General deterrence (of others who would be likely to commit the offense).
4. Incapacitation (at times called "protection of society” in that the offender’s incarceration prevents his commission of other crimes).
5. Rehabilitation.
These five goals have also been categorized as four with no distinction between general and specific deterrence.[6]
Consistent with due process, sentencing decisions must not be arbitrary or capricious. In both State and Federal courts "[i]ndeterminate sentencing under the rehabilitation model presented sentencing judges with a serious practical problem: how rationally to make the required predictions so as to avoid capricious and arbitrary sentences, which the newly conferred *219 and broad discretion placed within the realm of possibility. An obvious, although only partial, solution was to provide the judge with as much information as reasonably practical concerning the defendant’s 'character and propensities^] . . . his present purposes and tendencies’ ” (United States v Grayson, supra, at 48, quoting Pennsylvania ex rel. Sullivan v Ashe, 302 US 51, 55 [1937]) "and, indeed, 'every aspect of [his] life.’ ” (United States v Grayson, supra, at 48, quoting Williams v New York, 337 US 241, 250 [1949].) Thus, Congress promulgated legislation providing trained probation officers in the Federal districts to conduct presentence investigations of the defendant’s life and to present a presentence report. However, the sentencing Judge was not limited to the presentence report " '[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come’ ” (United States v Grayson, supra, at 50, quoting United States v Tucker, 404 US 443, 446 [1972]). In Organized Crime Control Act of 1970 §1001 (18 USC § 3577, now 18 USC § 3661) Congress provided: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.”
Under New York’s sentencing laws, sentencing may be indeterminate, definite, or intermittent. Sentences of imprisonment for a felony are generally indeterminate requiring that a defendant be sentenced to a period of incarceration between a prescribed minimum and maximum. (See, Penal Law art 70.) Service of the minimum period renders the defendant eligible for release on parole. In New York, probation officers prepare a presentence report for the sentencing Judge which must take into account the history and background of the offender. Nowhere in New York’s statute is a defendant’s trial perjury specifically set forth as a factor to consider in fixing an appropriate sentence. However the enhancement in Grayson (438 US 41, supra) was discretionary and based not on a specific statute but on the Court’s inherent power to consider all information relevant to the history and character of the defendant in light of sentencing goals. The New York cases cited by defense counsel as purported authority precluding enhancement are inapposite. (Cf., People v Carr, 135 AD2d 722 [2d Dept 1987]; People v Daniels, 132 AD2d 667 *220 [2d Dept 1987]; People v Brunson, 131 AD2d 689 [2d Dept 1987].) In those cases, a defendant was interviewed by the Probation Department, a law enforcement agency. The defendant in Daniels (supra) gave the Probation Department an exculpatory story concerning his guilt of the charges to which he pleaded. A condition of his plea was that his version of the incident to the Probation Department be consistent with his plea allocution. Since it was not, the trial court enhanced his sentence for breach of the condition. The Appellate Division found that the condition of the plea was not relevant to the sentencing function of the court, and that the trial court therefore abused its discretion in enhancing the sentence based on the breach. (Accord, People v Carr, 135 AD2d 722 [2d Dept 1987]; see also, People v Brunson, 131 AD2d 689 [2d Dept 1987] [it was an abuse of discretion to condition a negotiated plea on a guarantee that defendant will refrain from professing innocence to the interviewing probation officer].) Those cases held that it was improper for a court to approve a negotiated plea conditioned on a requirement that the defendant to make particular statements to the interviewing probation authorities. This issue has no relevance to the issue in Grayson (supra) and in the case at bar: that is, may a Judge consider, with all other facts about a particular defendant, his willful commission of perjury in his trial testimony for the purpose of imposing an appropriate individualized sentence?
Defense counsel concedes that defendant’s predisposition to truthfulness or mendacity during trial may be relevant to the sentencing goal of rehabilitation, but contends that "the particular decision to testify is subject to such intense and unique pressures, including the wide-spread perception that juries do hold the defendant’s failure to testify against him, as to render it [defendant’s perjury] highly unlikely to provide an accurate litmus test of the defendant’s dangerousness or prospects for rehabilitation generally”, citing and quoting Scott v United States (419 F2d 264, 269 [DC Cir 1969]): "The guilty man may quite sincerely repent his crime but yet, driven by the urge to remain free, may protest his innocence in a court of law.”
Counsel argues that because of these pressures, a defendant’s perjury in his trial testimony is not indicative of his character and is therefore irrelevant to future rehabilitation. This view was specifically rejected in United States v Grayson (supra, at 52): "A 'universal and persistent’ foundation stone in our system of law, and particularly in our approach to *221 punishment, sentencing, and incarceration, is the 'belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil’.”
Further, this court may enhance a sentence to serve a legitimate sentencing goal other than rehabilitation. It should further be noted that since deciding Grayson (supra) the United States Supreme Court in Dunnigan (507 US —, 113 S Ct 1111, supra) held that a sentencing court’s consideration of the defendant’s perjury at trial is not limited to the sentencing goal of rehabilitation but may be considered in light of the sentencing goals of deterrence and punishment. The United States Supreme Court in Dunnigan rejected the principle that the only penal purpose permissibly served by sentence enhancement is rehabilitation. The Court stated that contrary to the implication in many State court decisions,[7] it did not hold in Grayson (supra) that rehabilitation was the only justification for sentence enhancement based on perjury. Enhancement furthers the legitimate sentencing goals of punishment and incapacitation. (United States v Dunnigan, 507 US, at —, 113 S Ct, at 1118, supra.)
Since Grayson (supra) was decided, the philosophical pendulum has swung away from the emphasis on rehabilitation, which is no longer an enunciated goal of Federal determinate sentencing. (United States v Dunnigan, supra, 507 US, at —, 113 S Ct, at 1118, citing 28 USC § 994 [k];[8] and Mistretta v United States, 488 US 361 [1989].)
*222 By the time the Court decided Dunnigan (supra) determinate sentencing laws had superseded the former Federal law and these provisions mandate upward departure from the guidelines if the sentencing court finds that the defendant had obstructed justice. The parties in Dunnigan (supra) correctly assumed that term included perjury.
As noted above, defense sets forth two constitutional arguments against this court’s imposition of an enhanced sentence, to wit, that sentence enhancement (1) chills the defendant’s constitutional right to testify and (2) denies him due process because the procedural safeguards of a trial perjury are absent. These contentions are without merit. Sentence enhancement based on defendant’s trial perjury does not impermissibly chill his exercise of the right to testify in his own behalf, since it is clear that the constitutional right to testify is not a license to commit perjury. (United States v Dunnigan, 507 US —, 113 S Ct 1111 [1993], supra, citing United States v Grayson, 438 US 41, supra; Nix v Whiteside, 475 US 157, 173 [1986]; United States v Havens, 446 US 620, 626 [1980].)
"The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath * * * This view * * * is confirmed by the * * * constitutionality of perjury statutes [citations omitted] * * * Further support for this is found in an important limitation on the defendant’s right to assistance of counsel: Counsel ethically cannot assist his client in presenting what the attorney has reason to believe is false testimony. (See Holloway v. Arkansas, 435 U. S. 475, 480, n. 4 (1978); ABA Project on Standards for Criminal Justice, The Defense Function § 7.7 (c), p. 133 (Compilation 1974).” (United States v Grayson, supra, at 54.)
Nor is sentence enhancement a denial of due process because the defendant was not formally charged and tried for the perjury. Due process is ensured by the basic safeguards required under United States v Grayson (supra). First, the perjury must have been committed in the presence of the sentencing Judge. Second, the court must find that the perjury involved basic adjudicative facts rather than issues of ultimate fact (or law and fact). "[B]asic adjudicative facts pertain to who did what, where, when, how and with what motive or intent.” (People v Longuemire, 87 Mich App 395, 398, 275 *223 NW2d 12, 14 [1978], citing 18 Mich Law & Prac, Perjury § 1, at 458.) Ultimate fact questions concern legal definitions. If a person were asked if he had "committed a breaking and entering” and he answered falsely, "[a]t common law, it is doubtful that [such a falsehood could] ever be the basis of a perjury charge since a court would most likely construe [the answer] as mere opinion or as a conclusion of law beyond the realm of common knowledge”. (People v Longuemire, supra, 87 Mich App, at 398-399, 275 NW2d, at 14.)
Third, the evidence of the perjury must be material to the issues in the case in which defendant perjured himself. Finally, the defendant’s perjured trial testimony is only one factor the court must consider with all relevant facts in light of sentencing goals. (See, State v James, 109 NM 278, 784 P2d 1021 [1989], citing United States v Grayson, supra; see also, People v Redmond, 29 Cal 3d 904, 176 Cal Rptr 780, 633 P2d 976 [1981].)
To summarize, this court holds that it is authorized to consider a defendant’s trial perjury in enhancing a defendant’s sentence under New York’s indeterminate sentencing laws and such enhancement does not impermissibly chill a defendant’s right to testify. Such enhancement does not deny a defendant due process of law if imposed in accordance with the safeguards mandated in Grayson (supra).
Applying these safeguards, however, the court concludes that this case is not an appropriate one for sentence enhancement for the following reasons.
This court heard the defendant’s testimony, which concerned adjudicative facts: the time frame and causation of defendant’s use of illegal drugs ("who did what and when”). The prosecutor persuasively asserts these are facts about which defendant is not likely to be mistaken. Considering the evidence, the defendant appears to have lied about the genesis of his addiction to prey on the jury’s sympathies. The defendant was convicted by a jury of the sale of drugs to an undercover officer, which defendant under oath denied. The question arises as to whether the proof of defendant’s apparent perjury is sufficiently strong and the perjury so material that enhancement is warranted.
Unlike the defendant in Dunnigan (507 US —, 113 S Ct 1111, supra), defendant herein did not deny all involvement with illegal drugs. Specifically, he admitted to drug addiction and more importantly, testified that he was in the vicinity to *224 buy drugs, not sell them. While the jury found the defendant guilty beyond a reasonable doubt, his explanation for his presence in the area at the time of his arrest did not rise to the level of flagrantly incredible testimony as did the testimony of the defendant in Dunnigan.
In Dunnigan (supra) defendant categorically denied any involvement with illegal drugs. On the Government’s case-in-chief, five witnesses testified to personal observations of defendant’s illegal drug trafficking, four of whom admitted complicity in these enterprises.
As the Court noted in Dunnigan (supra) even under mandated enhancement for willful obstruction of justice, not every accused who testifies and is convicted will be found to have perjured himself. The court finds that under the totality of the circumstances herein, the proof of perjury is neither overwhelmingly strong nor material. The court is mindful of the caveat of the United States Supreme Court to the effect that a sentencing court is not required to enhance "in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false.” (United States v Grayson, supra, at 55.) In light of defendant’s history and all of the surrounding facts and circumstances, enhancement is not warranted.
Accordingly, the People’s motion to enhance defendant’s sentence is denied.

. Arizona: e.g., State v Lask, 135 Ariz 612, 663 P2d 604 (1983) (followed Grayson in dicta but because facts of that case involved a violation of probation based on open criminal charges, enhancement was improper); Alaska: Strachan v State, 615 P2d 611 (Alaska 1980) (stated it followed Grayson but remanded case for resentencing because record established sentencing court intended enhancement as punishment only); California: People v Redmond, 29 Cal 3d 904, 176 Cal Rptr 780, 633 P2d 976 (1981); Colorado: People v Wilson, 43 Colo App 68, 599 P2d 970 (1979) (followed Grayson in dicta but found abuse of discretion under facts of particular case); Connecticut: State v Huey, 199 Conn 121, 505 A2d 1242 (1986) (followed Grayson but held that in particular case resentencing was required because lower court gave too much weight to perjury and failed to consider other factors); Washington, D.C.: Banks v United States, 516 A2d 524 (DC App 1986); Idaho: State v Kohoutek, 101 Idaho 698, 619 P2d 1151 (1980) (following Grayson, court held that defendant’s sentence was properly enhanced based on lower court’s finding that defendant’s attempt to suborn perjury justified enhanced sentence); Iowa: State v Bragg, 388 NW2d 187 (Iowa App 1986); Illinois: People v Meeks, 81 Ill 2d 524, 411 NE2d 9 (1980); Kansas: State v May, 227 Kan 393, 607 P2d 72 (1980) (cited Grayson with approval as authority for proposition prosecutor could recommend an enhanced sentence based on perjury; defendant did not, however, receive an enhanced sentence); Maryland: Atkins v State, 40 Md App 461, 391 A2d 868 (1978); Maine: State v Plante, 417 A2d 991 (Me 1980); New Mexico: State v James, 109 NM 278, 784 P2d 1021 (1989) (followed Grayson but remanded case ordering findings on record); North Carolina: State v Thompson, 310 NC 209, 311 SE2d 866 (1984); Ohio: State v Stewart, 70 Ohio App 2d 147, 435 NE2d 426 (1980); Pennsylvania: Commonwealth v Alicea, 498 Pa 575, 449 A2d 1381 (1982) (followed but distinguished Grayson from case before it *216 where alleged "perjury” was simply withdrawn alibi notice); Rhode Island: State v Bertoldi, 495 A2d 247 (RI 1985); South Dakota: State v Degen, 396 NW2d 759 (SD 1986); Tennessee: State v Bunch, 646 SW2d 158 (Tenn 1983); State of Washington: In re Welfare of Luft, 21 Wash App 841, 589 P2d 314 (1979); West Virginia: State v Finley, 177 W Va 554, 355 SE2d 47 (1987); see also, generally, 34 ALR4th 888.

. Louisiana: State v Smith, 407 So 2d 652, 658 (La 1981); Massachusetts: Commonwealth v Coleman, 390 Mass 797, 461 NE2d 157 (1984); North Carolina: State v Vandiver, 321 NC 570, 364 SE2d 373 (1988), overruling State v Thompson, 310 NC 209, 311 SE2d 866 (1984).

. Hernandez v State, 446 So 2d 235, 236 (Fla App 1984) (followed Grayson); cf., Everage v State, 504 So 2d 1255, 1258 (Fla App 1986), reh denied 508 So 2d 13 (Fla 1987); City of Daytona Beach v Del Percio, 476 So 2d 197 (Fla 1985) (refused to follow Grayson under determinate sentencing statute).

. See, e.g., State v James, supra.

. " 'This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.
*217 " '1. The following conduct, while not exclusive, may provide a basis for applying this adjustment: * * *
" '(c) testifying untruthfully or [submitting] untruthful testimony concerning a material fact, ... a preliminary or grand jury proceeding, trial, sentencing * * * or any other judicial proceeding’.” (United States v Dunnigan, supra, at —, at 1115-1116, quoting USSG § 3C1.1 commentary, n 1 [c] [Nov. 1989].)

. In People v Snow (386 Mich 586, 194 NW2d 314 [1972]) the court listed four basic considerations in determining sentence: (a) the reformation of the offender (rehabilitation); (b) protection of society (incapacitation); (c) the disciplining of the wrongdoer (punishment); and (d) the deterrence of others from committing like offenses (general deterrence).

. Alaska: Smith v State, 691 P2d 293 (Alaska App 1984); Dymenstein v State, 720 P2d 42 (Alaska App 1986); Shannon v State, 771 P2d 459 (Alaska App 1989); Closson v State, 784 P2d 661 (Alaska App 1989); California: People v Redmond, 29 Cal 3d 904, 176 Cal Rptr 780, 633 P2d 976 (1981); In re Perez, 84 Cal App 3d 168, 148 Cal Rptr 302 (1978); Colorado: People v Wilson, 43 Colo App 68, 599 P2d 970 (1979); Illinois: People v Speed, 129 Ill App 3d 348, 472 NE2d 572 (1984); People v McBounds, 182 Ill App 3d 1002, 536 NE2d 1225 (1989); Iowa: State v Bragg, 388 NW2d 187 (Iowa App 1986) (by implication); Kansas: State v May, 227 Kan 393, 607 P2d 72 (1980); Louisiana: State v Shelton, 545 So 2d 1285 (La App 1989), cert denied 552 So 2d 377; Michigan: People v Adams, 430 Mich 679, 425 NW2d 437 (1988); Ohio: State v Gould, 68 Ohio App 2d 215, 428 NE2d 866 (1980); State v Stewart, 70 Ohio App 2d 147, 435 NE2d 426 (1980); Pennsylvania: Commonwealth v Alicea, 498 Pa 575, 449 A2d 1381 (1982); Commonwealth v Thurmond, 257 Pa Super 464, 407 A2d 1357 (1978); Rhode Island: State v Bertoldi, 495 A2d 247 (RI 1985); South Dakota: State v Carsten, 264 NW2d 707 (SD 1978); Washington: In re Welfare of Luft, 21 Wash App 841, 589 P2d 314 (1979); West Virginia: State v Finley, 177 W Va 554, 355 SE2d 47 (1987).

. 28 USC § 994 (k): "The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprison *222 ment for the purpose of rehabilitating the defendant or providing the defendant with needed education or vocational training, medical care, or other correctional treatment.”