#24821-a-JKM

**2008 SD 100**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

PAULA THORSBY,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEROME A. ECKRICH
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

SHERRI SUNDEM WALD
Deputy Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

KAREN PAIGE HUNT of
Brady & Pluimer, P.C.                    Attorneys for defendant
Spearfish, South Dakota                    and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON SEPTEMBER 29, 2008

OPINION FILED **10/22/08**

MEIERHENRY, Justice

[¶1.] Paula Thorsby appeals her sentence and argues that the circuit court erred in denying her request for suspended imposition of sentence. Thorsby further argues that the circuit court erred in admitting an unsigned and undated note from a clerk in the Meade County Clerk of Court's office describing an encounter with Thorsby. We affirm.

## FACTS

[¶2.] On December 14, 2007, State Highway Patrolman Desmond Watson stopped Thorsby on South Dakota Highway 79. Thorsby had crossed the fog line and was driving with expired license plates and an obstructed rear window. After making the stop, Patrolman Watson observed that Thorsby had been drinking. Thorsby failed the field sobriety tests, and Patrolman Watson placed Thorsby under arrest for Driving While Under the Influence.

[¶3.] Evidence showed that Thorsby was uncooperative and acted in an offensive and rude manner toward law enforcement after her arrest. Thorsby was uncooperative with Patrolman Watson when he arrested her. She demanded that her handcuffs be removed before entering the jail, and then made it difficult for the officers when they tried to remove the handcuffs in the booking area. She refused to give blood as required under state law. She refused to remove her jacket and fought the officers as they attempted to remove the jacket for her. She spit on one of the officers who was attempting to draw her blood. She tried to spit on another officer but desisted after the officers told her that it would increase her charges. Finally, she had to be forcibly restrained in order to obtain a blood sample. As a result,

Thorsby was charged with one count of Throwing Bodily Fluids, one count of Driving or Control of a Vehicle While Under the Influence of Alcohol, or in the alternative, Driving or Control of a Vehicle while having .08 Percent or More of Alcohol in Blood, and one count of Obstructing a Law Enforcement Officer.

[¶4.]     The State offered a plea agreement wherein the State would dismiss all other charges in exchange for Thorsby's plea of guilty to one count of Throwing Bodily Fluids.  The State also agreed to recommend a suspended imposition of sentence.  Thorsby pleaded guilty pursuant to this plea agreement on February 20, 2008.  Thorsby requested that sentencing occur on the same day and waived a presentence investigation and the forty-eight hour delay to which she was entitled under SDCL 23A-27-5 and SDCL 23A-27-1.[1]

[¶5.]     Before sentencing, the circuit court informed Thorsby that a note authored by a staff member in the Meade County Clerk of Court's office had been placed in the court file.  The note described an encounter that Thorsby had with a clerk.  The note described Thorsby's lack of civility to the clerk on January 29, 2008, when Thorsby arrived at the courthouse on the wrong date for a court appearance.  The clerk informed Thorsby that her court date was February 4, 2008 and asked if Thorsby would like to speak to her attorney.  The note indicated that Thorsby became irate and yelled obscenities and made rude gestures at the clerk.  After Thorsby had an opportunity to read the note, her attorney told the court that the note was not completely accurate; however, Thorsby acknowledged the encounter

---

1.     Thorsby waived these rights because she intended to return to Washington to her sick mother and grandmother as soon as possible.

and that she had been rude to the clerk. Thorsby made no other specific objection and failed to refute the note's contents.

[¶6.] At the close of the hearing, the circuit court sentenced Thorsby to one year in the South Dakota State Penitentiary, suspended execution on the condition that she spend thirty days in the Meade County Jail and complete two years of supervised probation. Thorsby immediately reacted to the sentence and became irate in the courtroom. The circuit court found her in contempt of court for her actions and added two days to her county jail sentence. Thorsby appeals raising one issue:

> **Whether the circuit court erred in denying Thorsby's request for a suspended imposition of sentence.**

## STANDARD OF REVIEW

[¶7.] Sentencing decisions within the statutory limits are reviewed under the abuse of discretion standard. *State v. McKinney*, 2005 SD 74, ¶26, 699 NW2d 460, 468. We have previously determined that:

> [T]he sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record. . . .

*State v. Arabie*, 2003 SD 57, ¶21, 663 NW2d 250, 257 (quoting *State v. Conger*, 268 NW2d 800, 801-02 (SD 1978)). "[I]t is settled that the range of evidence that may be considered at sentencing is extremely broad." *Id*.

**ANALYSIS**

[¶8.]    Thorsby argues that the circuit court abused its discretion when it refused the State's recommendation for a suspended imposition of sentence. Specifically, she contends that the circuit court erred in using the note from the staff member in the Meade County Clerk of Court's office as a factor in sentencing. The State, however, asserts that Thorsby waived her rights to presentence investigation and the forty-eight hour waiting period in her haste to leave South Dakota. The State further argues that the court's use of the note was not improper.

[¶9.]    The Due Process Clause of the United States Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." US Const amend V; *see* US Const amend XIV; *see also* SD Const art VI, § 2. A court must "balanc[e] the need for reliability with the need to permit consideration of all pertinent information" when sentencing to comply with due process requirements. Orner v. United States, 578 F2d 1276, 1279 (8thCir 1978). A South Dakota court has the discretion to "suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and conditions as the court may deem best." SDCL 23A-27-13. A court may enter a suspended imposition "when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served. . . ." *Id.*

[¶10.]    "Trial courts enjoy wide latitude in determining the applicable sentence for a defendant." State v. McCrary, 2004 SD 18, ¶8, 676 NW2d 116, 120 (citing State v. Milk, 2000 SD 28, ¶10, 607 NW2d 14, 17 (citation omitted)). This latitude allows courts to consider other evidence of the defendant's character such

as uncharged conduct. State v. Tiegen, 2008 SD 6, ¶47, 744 NW2d 578, 594 (citing

*McKinney*, 2005 SD 74, ¶26, 699 NW2d at 465-66). In addition, the sentencing

court is not bound by plea agreements made between the parties. *See* SDCL 23A-7-

9.

[¶11.]     In the present case, the circuit court voiced its concern over the lack of

a presentence investigation in assessing whether to consider a suspended

imposition of sentence. Nonetheless, Thorsby opted to waive her right to

presentence investigation per SDCL 23A-27-5 and the forty-eight hour waiting

period as required by SDCL 23A-27-1. The plea agreement between the State and

Thorsby included certain terms. The State agreed to drop all charges against

Thorsby other than the Throwing Bodily Fluids charge in exchange for Thorsby's

guilty plea. The State also agreed to recommend a suspended imposition of

sentence if Thorsby obeyed the terms of her probation.[2]

[¶12.]     Throughout the proceedings, the circuit court thoroughly advised

Thorsby of the rights she waived by pleading guilty and that the court was not

bound by the State's recommendation of a suspended imposition of sentence.

Specifically, the court advised:

> **The court**: Okay. Do you understand, ma'am, that if you plead
> guilty to the charge of Count I, Throwing Bodily Fluids in a
> County or Municipal Jail, what you're doing is you're pleading
> guilty to a Class 6 Felony, which carries with it a maximum
> penalty of two years imprisonment in the South Dakota State
> Penitentiary, a $4,000 fine, or both such fine and imprisonment.
> Do you understand that, ma'am?
> **Thorsby**:     Yes.

---

2.     The suspended imposition of sentence is particularly important to Thorsby
       because she could not gain employment as an over-the-road truck driver with
       this conviction on her record.

> **The court**: And do you understand that if you plead guilty you could receive the maximum penalty?
> **Thorsby**: Yes.
> **The court**: Knowing, ma'am, that under the terms of this particular plea agreement you could receive the maximum penalty, which includes two years behind bars, are you prepared to enter a plea of guilty here today?
> **Thorsby**: Yes.

The court further advised Thorsby:

> **The court**: Okay. Do you understand that any plea agreement that has been reached here, any recommendations that are going to be made the Court does not have to abide by, in other words, I don't have to follow them. Do you understand that, ma'am?
> **Thorsby**: Yes.

During Thorsby's change of plea and sentencing hearing, the court made it clear to Thorsby that it did not have to sentence her based on the State's recommendations or the plea agreement.

[¶13.]    Thorsby argues that the circuit court should not have considered the note from a clerk in the Meade County Clerk of Court's office. Court staff anonymously filing a note in a public criminal file is undoubtedly irregular and should not be condoned. The clerk acted improperly by placing the note in Thorsby's file. For the judge, it became an ex parte communication. We review an ex parte communication as follows:

> If an ex parte communication is invited or initiated by the judge, no prejudice needs to be shown. However, where an ex parte communication is not invited or initiated by the judge, reversible error occurs only if the adverse party is prejudiced by an inability to rebut the facts communicated and if improper influence appears with reasonable certainty.

O'Connor v. Leapley, 488 NW2d 421, 423 (SD 1992) (citations omitted)). Since the judge did not invite or initiate the ex-parte communication, Thorsby must show inability to rebut the facts and improper influence.

[¶14.] Regardless of the impropriety of a clerk placing a personal note concerning a defendant in a criminal file, Thorsby has shown no prejudice. *See O'Connor*, 488 NW2d at 423. The judge appropriately revealed the note and its contents to both Thorsby and the State. Thorsby and her counsel reviewed the note, but made no specific objection that the note not be considered. Thorsby's counsel addressed the court as follows: "I guess in a nutshell Ms. Thorsby disagrees with a couple of the details of exactly what happened, she would concede that she was rude that day[.]" No one made further reference to the note.

[¶15.] In addition, nothing in the record indicates that the contents of the note unduly influenced the court during sentencing. The court did not mention the note while sentencing Thorsby but rather referred to her offensive behavior in general, especially in regard to how she behaved to law enforcement. The court said:

> I have reviewed not just the - - the Family Services [drug assessment] report that I alluded to earlier and also - - I have also reviewed the police reports and had an opportunity to listen here, and I find that I have enough facts before me that I may meaningfully exercise my sentencing discretion.
>
> . . . It is true, ma'am, that you haven't been convicted of any other crime, it looks like, but it would seem to me that there is certainly a theme here to your conduct and that . . . is a lack of control, to put it charitably. When I read the police reports your behavior didn't start - - your obstreperous, to put it more than charitably incredibly rude behavior, and it really goes beyond that, didn't start in the jail, it started way back when you were arrested, and then it continued and it still continues. So I think

> that, ma'am, maybe to a larger extent is a character trait of your[ ]s, your ability to control your anger and then taking it out on everybody else around you in . . . not just a highly inappropriate but, frankly, a felonious way.
>
> Other factors the [c]ourt has considered [are] the plea agreement itself, the dismissal of the charges, the underlying DUI charges. So I have tried to wrap everything as best I can in the information that's been available to me at this time, and I am perfectly mindful of the reason why the suspended imposition of sentence is requested.

[¶16.] The ultimate decision to grant a suspended imposition of sentence lies with the circuit court. Clearly, the circuit court considered the defendant's request along with the other information it had before it, including the police report. Although Thorsby's behavior toward court staff was described in the note, there is no indication that it unduly influenced the court's decision. Even so, Thorsby made no objection to the note and admitted to being rude to the clerk. In order to suspend imposing a sentence, the court has to find that "the ends of justice and the best interests of the public, as well as the defendant, will be served [in entering a suspended imposition.]" SDCL 23A-27-13. The circuit court explained that based on the information before it, it could not make that finding. Thorsby has failed to show that the circuit court abused its discretion in denying Thorsby's request for a suspended imposition of sentence.

[¶17.] We affirm.

[¶18.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.